**STEVEN N. FELDMAN**

sfeldman@hueston.com
D: 213 788 4272
T: 213 788 4340
F: 888 775 0898

523 West 6th Street
Suite 400
Los Angeles, CA 90014

# HUESTON HENNIGAN LLP

September 25, 2020

Hon. Valerie E. Caproni
Thurgood Marshall
United States Courthouse, Courtroom 443
40 Foley Square, New York, NY 10007

Re:     *Brody Simpson v. Peloton Interactive, Inc.*, Case No. 20-cv-07630-VEC
        <u>**Letter Motion for Approval of Redacted Filings**</u>

Dear Judge Caproni:

Respondent Peloton Interactive, Inc. writes pursuant to Rule 5(B) of Your Honor's Individual Rules for Practice in Civil Cases and Your Honor's September 22, 2020 Order (Dkt. No. 14) to submit this letter motion for approval of redacted filings. The parties have conferred, and Petitioner does not consent to these requests.

The parties' arbitration award is a "judicial document" for which a presumption of public access attaches. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). However, "the presumption of access here can be overcome [for certain information] by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.* at 126. It is well-established that a company's wish to seal certain sensitive business information amounts to this higher value. *See, e.g.*, *Valassis Commc'ns, Inc. v. News Corp.*, 2020 WL 2190708, at *4 (S.D.N.Y. May 5, 2020) ("[P]rotecting the confidentiality of sensitive business information is a legitimate basis for rebutting the public's presumption of access to judicial documents."); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d  394, 412–13 (S.D.N.Y. 2015) (sealing "revealing confidential negotiations" with a customer); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (determining that "material concerning the defendants' marketing strategies, product development, costs and budgeting" contain "highly proprietary material" that should be sealed); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (permitting redactions in documents containing advertising expenditures and plans, merchandising strategies, policies, and sales).

This case involved several issues related to Peloton's sensitive business information.  For example, Peloton's music licensing practices were discussed at length, including Peloton's confidential negotiations with music publishers, strategic decisions relating to licensing, and response to a pending copyright lawsuit that has since been resolved through a confidential settlement. This licensing information relates to pricing, contractual terms, and other sensitive business information that Peloton's competitors and strategic partners could use to unfairly compete with or negotiate against Peloton. This matter also involved sensitive business information relating to Peloton's product development and maintenance of its content library, as well as strategic advertising decisions, including non-public messaging strategies. For these reasons, the parties entered into a Protective Order including two tiers of confidentiality, and the

# HUESTON HENNIGAN LLP

arbitration proceeding was marked confidential pursuant to that Order. (Ex. 1; *see id.* ¶ 7(j).) Though a confidentiality agreement alone does not justify restricting the public's access to information, Peloton notes that all requested redactions relate to confidential information under the parties' Protective Order and such information is not otherwise public.

Based on the foregoing, Peloton respectfully requests the following narrowly tailored redactions to the Petition and attached exhibits:

Petition to Confirm the Arbitration Award (Dkt. Nos. 1 and 2-1)

•      Paragraphs 4, 54, and 57 and footnote 2 contain sensitive business information regarding Peloton's rates of adding new content to its content library. Competitors and strategic partners could use this sensitive information to unfairly compete with or negotiate against Peloton, including in music licensing agreements. It also provides competitors insight into Peloton's strategic product development, including how it curates and maintains its product (the content library).

•      Paragraphs 35, 36, and 54 contain sensitive business information regarding the exact class library size of Peloton's class library at various times.  As with the above, such specific information is highly sensitive because it provides competitors insight into Peloton's strategic product development, including how it curates and maintains its content library. Such information also gives Peloton's strategic partners confidential inside information that could unfairly harm Peloton's negotiating position.

•      Paragraph 56 contains sensitive business information relating to Peloton's marketing strategies and internal company discussions.  Although Peloton vehemently disagrees with the arbitrator's characterization of this information, the conclusion reflects her interpretation of confidential testimony and the sensitive business information contained within.

Exhibit B (Interim Arbitration Award, Dkt. No. 2-3)

•      Paragraph 4 contains sensitive business information regarding Peloton's strategic and confidential negotiations with music publishers, as well as internal business strategy.  The subject music publishers, as well as other strategic partners and competitors, could use this sensitive information to unfairly compete with or negotiate against Peloton, including for music licensing agreements subject to renewals. This information also reflects Peloton's highly confidential and strategic decisions to initially establish itself in the connected fitness market, which new competitors could use to enter the market and compete against Peloton.

•      Paragraphs 17, 18, 19, 20, and 22 and pages 14, 15, and 16 contain sensitive business information that reflects non-public information about confidential negotiations and music licensing disputes with certain music publishers. Competitors and strategic partners, including music publishers, could use such information to gain an unfair competitive advantage to compete against Peloton or use against Peloton in future negotiations. This information also reflects Peloton's internal business strategy and policies relating to its content and music licensing that similarly can be used against Peloton.

•      Paragraphs 31, 32, 33, 34, 37, 38, and pages 9, 10, 11, 13, and 17 contain sensitive business information regarding Peloton's rates of adding new content to its content library and the exact content library size of Peloton's content library at various times.  As discussed above, competitors and strategic partners could use this sensitive information to

# HUESTON HENNIGAN LLP

unfairly compete with or negotiate against Peloton, including in music licensing agreements. It also provides insight into Peloton's strategic product development, including how it curates and maintains its class library.

- Paragraph 35 and page 15 contain sensitive business information (including quotes) from a highly confidential, non-public internal document related to Peloton's communications with its members. Such information is a product of internal deliberations of Peloton's employees and reflects Peloton's business strategy and policies, especially regarding member retention and how it responds to (at the time) pending litigation.

- Page 10, as described above, contains sensitive business information relating to Peloton's marketing strategies and internal company discussions. Although Peloton vehemently disagrees with the arbitrator's characterization of this information, the conclusion reflects her interpretation of confidential testimony and the sensitive business information contained within.

<u>Exhibit C (Final Arbitration Award)</u>

- Page 7 contains personal identifying information for individuals unrelated to this action.

***

Because the Petition (Dkt. No. 1), Unredacted Petition (Dkt No. 2-1), Exhibit B (Dkt. No. 2-3), and Exhibit C (No. 2-4) were previously filed publicly without the above requested redactions, Peloton requested these documents be sealed pursuant to Rule 5(B)(iii)(f), and the Clerk's Office sealed these documents. In addition to the above requests, Peloton also respectfully requests these documents (Dkt. Nos. 1, 2-1, 2-3, and 2-4) remain sealed.

Respectfully submitted,

Steven N. Feldman
*Counsel for Peloton Interactive, Inc.*