# EXHIBIT C
# Filed Under Seal



Case Number: 01-19-0002-5422

Brody Simpson
-vs-
Peloton Interactive, Inc.

## OPINION AND FINAL AWARD

I, Virginia Stevens Crimmins, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into between the above named parties, and having been duly sworn, and having heard the allegations and proofs submitted by the parties during a virtual hearing on April 29, 2020 and via post-hearing submissions, do hereby FIND as follows:

Claimant Brody Simpson ("Claimant" or "Mr. Simpson") brought this Arbitration on July 19, 2019 against Respondent Peloton Interactive Inc. ("Respondent" or "Peloton"), claiming violations of the Kansas Consumer Protection Act, K.S.A. § 50-625, *et seq*. ("KCPA"). Following discovery, an arbitration hearing was held on April 29, 2020 before the undersigned via video conferencing pursuant to the Consumer Rules of the American Arbitration Association. Mr. Simpson appeared in person and through Counsel and presented evidence. Peloton, appeared through a corporate representative, as well as through Counsel and presented evidence.

Following receipt of post-hearing briefing, I issued an Interim Award on June 23, 2020 which awarded Claimant $253.30 against Respondent under the KCPA and set a briefing schedule for Claimant's Counsel's fee application. Claimant filed a petition seeking $117,799.00 in attorneys' fees and $ 10,739.94 in costs. Respondent filed a response disputing the reasonableness of counsel's rates, hours worked, and costs, and requesting that at most $1,267.50 be awarded in fees and costs. Claimant filed a reply.

Under the KCPA, "the court may award to the prevailing party reasonable attorneys' fees . . . if . . . a supplier has committed an act or practice that violates this act and the prevailing party is the consumer; and, an action under this section has been terminated by a judgment." K.S.A. § 50-634(e). This statutory language has been interpreted to include expenses as a part of reasonable attorneys' fees. *York v. InTrust Bank, N.A.*, 265 Kan. 271, 315, 962 P.2d 405, 434 (Kan. 1998). I have already determined that Claimant was a prevailing party under the KCPA and an award of attorneys' fees would be appropriate. I hereby incorporate the Opinion and Interim Award by reference and shall now rule on the fee application.

Under Kansas law, courts must determine the reasonableness of an attorneys' fee award by analyzing eight factors set forth in the Kansas Rules of Professional Conduct. *Richardson v. Murray,* No. 120,680, 2020 WL 4723097, at *5 (Kan. Ct. App. Aug. 14, 2020) (slip op.). These factors include: "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood, if

1

apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent." KRPC 1.5(a); *see also Richardson*, 2020 WL 4723097 at *5.

Although a court should consider each of these factors, no one factor is to dominate or control the analysis, and it is possible that some of the factors may not be relevant to the question of reasonable attorneys' fees in a particular case. *Richardson*, 2020 WL 4723097, at *8 (affirming district court decision when the court did not analyze do of the factors which did "not appear relevant to the assessment of attorney fees."); *see also Johnson v. Westhoff Sand Co.,* 281 Kan. 930, 951, 135 P.3d 1127, 1142 (Kan. 2006) ("KRPC 1.5 contains nothing that suggests one factor is to dominate the other seven, . . ..). Moreover, the burden of proving "the reasonableness of the fees and expenses requested is upon the party making the request. *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 210, 235 P.3d 515, 532 (Kan. 2010) "District judges are experts on attorney fees and must use [KRPC] 1.5(a) ... as the methodology to assess the reasonableness of any request for attorney fees." *Westar Energy, Inc.,* 44 Kan. App. 2d at Syl. ¶ 8. The determination of the reasonable value of attorney's fees in a given matter lies within the sound discretion of the trial court. *Johnson,* 281 Kan. at 940.

### A. Factor 3 (Reasonable Fee) and Factor 7 (Experience, Reputation and Ability)

One of the factors under Rule 1.5 that is heavily contested by the parties is the fee customarily charged. This factor coincides with factor 7 which analyzes the experience, reputation and ability of the attorneys appearing in this matter. As such, these factors will be analyzed together.

The court can determine a reasonable hourly rate based upon "what lawyers of comparable skill and experience, practicing in a similar area of specialty, would charge for their time." *Hayne v. Green Ford Sales, Inc.*, No. 09-2202-JWL, 2010 WL 2653410, at *5 (D. Kan. June 29, 2010). The relevant community is considered to be the area where the litigation occurs, and "[u]nless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state lawyer possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir.1995) (citing Ramos, 713 F.2d at 555); *see also Reazin v. Blue Cross & Blue Shield of Kansas, Inc.,* 899 F.2d 951, 983 (10th Cir. 1990) (affirming district court's award of higher rates where unusual circumstances warranted the departure).

Claimant bears the burden, as the moving party, of showing that the requested rates are reasonable and in line with similar lawyers providing similar services. *Weaver v. JTM Performant Recovery, Inc.*, No. 2:13-CV-2408-JTM, 2014 WL 4843961, at *9 (D. Kan. Sept. 29, 2014) (citing *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998)). "If the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate." *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1264 (D. Kan. 2017).

2

Claimant did not provide specific evidence that his counsels' hourly rates are within the line of rates in the Kansas City market for similar work under the KCPA. Claimant provided support that the requested rates are "the usual and customary lodestar rates charged in Chicago, Illinois, and in the national venues in which Claimant's Counsel typically handle cases for individuals doing the type of work performed in this arbitration." *See* Claimant's May 13, 2020 Declaration at ¶ 10. Claimant's Counsel also averred that it has "been retained on hourly matters at these rates and" had "been paid retainers based upon these rates." *See id.*

Respondent argued that the requested rates are "patently unreasonable under Kansas law." Peloton's Response to Supplemental Request for Fees and Costs at p. 5 (*hereinafter* "Opp."). Respondent argued that the mean hourly rate for attorneys practicing in consumer law in Kansas is $225 an hour and primarily relies upon a 2017 report prepared by the Kansas Bar.

In reply, Claimant argued that Respondent has not shown that Claimant's Counsel's rates are "unreasonable" in the Kansas market for a variety of reasons, including that Claimant's Counsel's rates are less than the rates Respondent paid for this Kansas arbitration, and that the large-stake nature of this case, and its potential impact on other litigation, justify an hourly departure of rates charged by Kansas attorneys. Claimant's Reply Brief at p. 5-7.

Neither Claimant nor Respondent provided any evidence of the "current" market rate for attorneys' fees in the Kansas City metropolitan area for consumer matters under the KCPA, through current or recent cases, studies, or declarations of attorneys currently practicing in this area and handling similar cases.[1] *See e.g., Fox*, 258 F. Supp. 3d at 1264–65 (reviewing detailed affidavits of counsel regarding experience, and affidavits of practitioners regarding customary rates in the area). Moreover, beyond general statements like "over a decade of combined experience" and more than 10 years, Claimant also failed to provide sufficient specific information which would allow me to assess the reasonableness of the fees for specific lawyers or staff members who have worked on the case, including information such as when they graduated law school, how many cases they have tried, or handled in the consumer protection area. Obviously, an associate with one or two years of experience would likely have a lower rate than a fifth- or sixth-year associate, and the number of hours which would be reasonable for certain tasks may vary depending upon the years of experience. This basic information was notably absent from the briefing.

For example, Ms. Milan's, who was one of the lead attorneys for Claimant at the evidentiary hearing, hourly rate is $400 an hour. Similarly, Adam Prom's, the other of Claimant's lead attorneys at the evidentiary hearing, hourly rate is $500 an hour. Contrast these rates with the rate of an associate J. Dominick Larry. Claimant's Counsel submits Mr. Larry's time at $700 an hour; however, I cannot analyze the reasonableness of this rate in a vacuum. I am not familiar with Mr. Larry's work, he did not appear before me at the evidentiary hearing, and no evidence or information has been presented which would justify a swing of more than $200-$300 an hour for

---

[1] Because the Kansas City metropolitan area covers both Kansas and Missouri, and most practitioners are licensed and practice in both state, courts often look at submission of evidence relating to both rates in Kansas and in Missouri. *See e.g., Fox*, 258 F. Supp. 3d at 1264. Besides my own experiences, the most recent fee article that I am aware of analyzes billing rates from 2019 and finds that the median rate of attorneys in the Kansas City market is $405 an hour and $475 an hour for partners. 2019 Billing Rates, Missouri Lawyers' Weekly, https://molawyersmedia.com/2019/08/02/billing-rates-2019/.

3

this attorney. Perhaps Mr. Larry has been practicing significantly longer than Ms. Milan and Mr. Prom, or has some other experience which would justify a higher rate but the record is void of any of the information that I would need to assess these differences.[2]

Despite the overwhelming lack of information provided in the briefing about the current Kansas City market rates for similar lawyers in similar cases, Respondent provided its counsel's rates. Although, Respondent objects to the relevancy of its rates,[3] I concur with Claimant's Counsel that the rates charged by both parties in this matter may be the best evidence that I have of current market rates.

Although Respondent asks me to declare that a reasonable market rate is $225 an hour for this type of case, this hourly rate is based upon fee information that is several years old, and Respondent's Counsel charged hourly rates for this arbitration which were well in excess of $225 an hour, ranging from $660.00 an hour for a second-year associate to $1,045.00 an hour for a partner.[4] This leads me to conclude that either the market rate for these types of matters is significantly more than $225 an hour, or, as is argued by Claimant, that there are some unique circumstances surrounding this case that justify an upward departure.

From the information provided to me, it appears that while this is an individual arbitration action brought by Claimant against Respondent, Claimant's Counsel represents more than 2,000 other individuals who have claims similar to Claimant that have been brought against Respondent under the same or similar consumer protection laws. At the hearing, Respondent argued that the outcome of this matter would impact its other customers, (*see e.g.,* Hearing Transcript 336:3-337:11), and the parties have vociferously litigated this matter with more than sixteen different attorneys appearing on the pleadings, hearing, and in billing records. As such, I concur with Claimant's Counsel's argument that there is more to this case than meets the eye at first glance. The unique circumstances of this matter, and the fact that its implications go beyond Kansas, justify use of counsel from outside the KC market, for both parties, and therefore, justify slightly higher rates than what may normally be charged.

That being said, although I find some upward departure is appropriate, based upon the information provided, I cannot find that Claimant met his burden to show that a blended rate of $542.00 an hour is reasonable, especially when the two primary attorneys' rates are well below

---

[2] I do not doubt that these are Claimant's Counsel's rates in Chicago, Illinois, nor that they charge hourly-paying clients these rates. As a licensed attorney in Missouri, Kansas and Illinois, I am well aware that my work in Illinois often commands a higher rate than my work in Kansas City. And, although that may seem unfair because the work product is the same regardless of whether the case is in Kansas City or Chicago, they are different legal and economic markets. Given the law in this jurisdiction, I feel I am compelled to look to the Kansas City market, and not simply upon Claimant's Counsel's evidence of the current Chicago market.

[3] "The Court may properly consider the rate of opposing counsel when setting reasonable hourly rates." *Fox*, 258 F. Supp. 3d at 1267; *see also Garcia v. Tyson Foods, Inc.,* No. 06-2198-JTM, 2012 WL 5985561, at *3 (D. Kan. Nov. 29, 2012), aff'd, 770 F.3d 1300 (10th Cir. 2014) (ordering production of Defendants' hourly rates and comparing hourly rates of defense counsel to Plaintiffs' counsel in determining a reasonable rate). Attorneys are to charge a reasonable rate for their time. K.R.P.C. 1.5(a). Accordingly, the rates charged by other lawyers in the very matter in which a fee application is made is relevant to the overall question of a reasonable market rate.

[4] Claimant's Counsel did not provide information regarding the number of years its attorneys had been practicing law, nor any of its staff rates, so I cannot do a full apples-to-apples comparison.

4

this amount. The average 2019 Kansas City hourly market rate for partners is $475 an hour, and this average rate includes rates obtained in large, complex class action matters which typically command a high hourly rate. The average 2019 Kansas City hourly market rate for all lawyers is $405 an hour. Normally, I would analyze the reasonableness of each individual rate based upon factors such as length of time in practice, accomplishments in the field, work performed in the case, but as set forth above, I simply do not have enough evidence to conduct this individualized analysis. Since I cannot conduct this individualized analysis, I find based upon the limited information presented, as well as my knowledge of the Kansas City market, a blended rate of $450 is reasonable. Not only is this rate a slight northward departure of the average rate in the Kansas City market (as is justified by the unique, national implications of this matter), but the reasonableness of this rate is also buttressed by the fact that it is the average of the rate of the two attorneys who spent the most number of hours working on this case, and who successfully took the case to trial for Claimant.[5]

### B. Factor 1 (Reasonable Number of Hours)

The next inquiry is whether the amount of hours spent by Claimant's Counsel is reasonable. Respondent objects to all but one of Claimant's Counsel's time entries for a myriad of reasons including that the entries (1) are vague; (2) contain duplicative, excessive or unnecessary work, including work for other cases; (3) constitute impermissible block billing, and/or (4) are for non-compensable clerical work, or work that should be billed at a paralegal rate. I have reviewed in detail Claimant Counsel's billing records, as well as Respondent's detailed objections.

In reviewing Claimant's Counsel's billing records, for the most part I find them sufficiently specific and reasonable. *Fox*, 258 F. Supp. 3d at 1255 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." (citation omitted)). For example, on February 14, 2020, Dominick Larry billed 9.4 hours for "Defending Brody Simpson deposition." Respondent's only objection to this time entry is that it is vague. Yet, it is very express what Mr. Larry indicated he was doing during this time, and I am not sure what other detail he needed to provide.

Although most of Respondent's vague objections are not well taken, in reviewing Claimant's Counsel's records, there are some record from which I cannot tell how the description relates to or furthered this arbitration. Specifically, these records include the following:

---

[5] Adam Prom billed 70.6 hours at $500 an hour, and Madeline Milan billed 74.5 hours at $400 an hour. Given their services at the evidentiary hearing, I am able to review and analyze their experience, and abilities and was impressed by both attorneys. Accordingly, I would find that these individual rates are reasonable, especially given that a second-year associate working for Respondent on this case would command $660 an hour.

5

| Levitt, Adam | PT | 4/23/2019 | Conducted research; participated in teleconference with Ashley Keller; engaged in follow up regarding same | $ 985.00 | 0.6 | 0.2 for Simpson | $ 197.00 |
|---|---|---|---|---|---|---|---|
| Levitt, Adam | PT | 4/29/2019 | Reviewed memorandum; teleconference with Ashley Keller regarding potential case; engaged in follow up regarding same | $ 985.00 | 0.7 | 0.2 for Simpson | $ 197.00 |
| Levitt, Adam | PT | 5/6/2019 | Correspondence with Ashley Keller; followed up on joint prosecution agreement | $ 985.00 | 0.4 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 5/7/2019 | Correspondence with Ashley Keller regarding next steps; engaged in follow up on research related issues | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 5/15/2019 | Correspondence with Ashley Keller and Nick Larry regarding next steps | $ 985.00 | 0.4 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 5/17/2019 | Followed up on current status and next steps; correspondence with co-counsel regarding same | $ 985.00 | 0.4 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 5/22/2019 | Correspondence with co-counsel regarding status; engaged in follow up relating thereto | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 5/23/2019 | Correspondence with Ashley Keller regarding current status; engaged in follow up regarding same | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 7/1/2019 | Correspondence with Ashley Keller and Nick Larry regarding current status and next steps; reviewed notes regarding same | $ 985.00 | 0.5 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 7/15/2019 | Teleconference with Nick Larry regarding current status of arbitration complaint and next steps; engaged in internal follow up regarding same | $ 985.00 | 0.5 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 7/16/2019 | Discussed current status of arbitration materials; received and began reviewing arbitration materials; correspondence with Nick Larry and others regarding same | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 7/17/2019 | Correspondence with co-counsel regarding finalizing arbitration papers; engaged in follow up discussions with AP regarding same | $ 985.00 | 0.7 | 0.1 for Simpson | $ 98.50 |
| Prom, Adam | A | 7/24/2019 | Exchange emails with Casey Edwards and co-counsel regarding service of flash drive of arbitration demands on Peloton | $ 500.00 | 0.8 | 0.1 for Simpson | $ 50.00 |
| Levitt, Adam | PT | 7/26/2019 | Correspondence with Ashley Keller regarding response from AAA and status of interaction with opposing counsel; engaged in internal follow up regarding same | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/1/2019 | Correspondence with Ashley Keller and Nick Larry regarding current status of claims; engaged in follow up related thereto; correspondence with opposing counsel regarding next steps; follow up correspondence with co-counsel regarding same | $ 985.00 | 0.5 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/2/2019 | Follow up correspondence with AAA and opposing counsel; correspondence with co-counsel regarding various strategic and related issues; engaged in follow up correspondence with opposing counsel regarding same | $ 985.00 | 0.6 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/5/2019 | Correspondence with Ashley Keller regarding current status and meet and confer with opposing counsel; engaged in follow up related thereto | $ 985.00 | 0.5 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/6/2019 | Correspondence with co-counsel regarding arbitration demands; correspondence with opposing counsel and AAA regarding next steps | $ 985.00 | 0.4 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/7/2019 | Followed up on arbitration demand issues; reviewed correspondence with co-counsel regarding same | $ 985.00 | 0.4 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/8/2019 | Participated in strategy call with co-counsel in advance of call with opposing counsel; reviewed materials regarding same | $ 985.00 | 0.8 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/11/2019 | Correspondence with co-counsel regarding various factual issues and procedural matters; engaged in follow up regarding same | $ 985.00 | 0.3 | 0.1 for Simpson | $ 98.50 |
| Levitt, Adam | PT | 8/13/2019 | Received and began reviewing correspondence; discussion with co-counsel regarding same | $ 985.00 | 0.5 | 0.1 for Simpson | $ 98.50 |

In addition to being vague, Respondent argued that the work set forth in these billing entries apply to some 2,784 cases filed against it by Claimant's Counsel, and not to just 3 Kansas arbitrations (one of which is Mr. Simpson's arbitration). As a result of the additional cases, Respondent argued that this time needs to be more heavily discounted and divided between all 2,784 cases, instead of the three Kansas cases. Besides the contradictory statements of counsel, I do not have any other evidence in front of me that would resolve the factual dispute of whether the work applied to just the three Kansas cases or all of the more than 2,000 cases involving a similar issue.

Although, it is clear that Claimant's Counsel has substantially discounted this work, I cannot tell from the description how, or even if, they apply to the Claimant in this case. This is especially true when I compare it to other entries which are not vague, and by the description apply

6

to Mr. Simpson's case, as well as other proceedings. *See e.g.,* September 30, 2019, entry by Adam Levitt ("Correspondence with co-counsel regarding various Kansas case issues; engaged in follow up regarding same"). As a result, I am discounting the 2.4 hours allocated to Mr. Simpson from these billing records by 50% and will award 1.2 hours of this time.

Next, there are several other entries where Respondent objected that the time being spent related to other matters, including federal court litigation, or duplicated or copied work from other litigation. In all of these instances, it appears that when the work being performed benefitted Claimant, as well as other related matters, Claimant's Counsel has exercised billing judgment and discounted its time for these other matters. Respondent has provided no concrete examples (e.g., comparisons of the alleged identical work product) which would justify further reduction. With four exceptions, as discussed below, these descriptions were specific enough such that I could tell how the work being performed related to this matter, was reasonable to the prosecution of Claimant's claims, and find that Claimant's Counsel's self-exercised billing judgment was sufficiently reasonable such that a further discount is not warranted.

With respect to the following four entries, however, I concur with Respondent that the descriptions are sufficiently vague, coupled with block billing such that it appears that these tasks relate to another case and should not have been included in this invoice.

| Name | | | Date | Description | Rate | Hours |
|---|---|---|---|---|---|---|
| Prom, Adam | | A | 10/17/2019 | Participate in call with co-counsel regarding damages; Draft and email to the team a response letter for the preliminary hearing in ▊ | $ 500.00 | 2.6 |
| Prom, Adam | | A | 11/12/2019 | Participate in Simpson preliminary call; Review and revise interrogatories and doc requests in ▊ and also doc requests in ▊ | $ 500.00 | 3.7 |
| Prom, Adam | | A | 1/4/2020 | Call with co-counsel regarding status of 3 remaining arbitrations; Complete ▊ witness statement. | $ 500.00 | 1.0 |
| Prom, Adam | | A | 1/6/2020 | Exchange emails with co-counsel regarding ▊ witness statement; Exchange emails with co-counsel regarding additional discovery requests in Simpson. | $ 500.00 | 0.7 |

Although discounts were made to these entries to account for the work on other cases, I cannot tell whether these discounts were reasonable. For example, on January 4, 2020, Mr. Prom spent one hour on a phone call regarding the status of the 3 remaining [Kansas] arbitrations and completed the ▊ witness statement. Claimant's Counsel seeks .2 hours for this work. However, because time has not been assessed to the discrete tasks, I cannot tell whether this is reasonable or not. If the phone call with counsel took 36 minutes, then .2 may be a reasonable amount to be billed; however, if the phone call was only a 10 minute phone call, and the remainder of the hour Mr. Prom spent working on January 4 was for the ▊ matter, .2 is excessive. Given the block billing nature of these descriptions and the lack of detail provided, I cannot confirm that the hours spent were reasonable. I will reduce the amount of time claimed in these four entries by 1 hour.

Respondent also objects to a variety of tasks billed as "nonrecoverable clerical or reduced fee paralegal work." Upon review of these records, I find most of these objections to be without

7

merit. For example, emails with opposing counsel about scheduling depositions, communications with the Claimant, and working on discovery responses, including service, is not clerical. I will reduce the requested hours by .5 to eliminate clerical tasks performed on January 29, 2020 (arranging for office space), and September 30, 2019 (docketing letters).

Finally, Respondent objects to Claimant's Counsel's billing records on the grounds that the work was performed by too many lawyers resulting in duplicative and excessive charges. For example, Respondent objects to Claimant's billing records on November 12, 2019 because two attorneys attended the preliminary hearing conference on Claimant's behalf. Similarly, Respondent objects to Claimant's billing records because he had two attorneys attend and participate in the evidentiary hearing.

Although a court should review records for potential duplication, the fact that multiple attorneys worked on a project does not necessarily mean that there is duplication. It is unrealistic to expect litigation to occur in a vacuum without any communication and coordination with colleagues. The question then becomes how much is reasonable, and a court is permitted to "look to how many lawyers the other side utilized in similar situations as an indication of the effort required." *Fox*, 258 F. Supp. 3d at 1257.

Respondent's objections regarding duplicative and excessive billing records are overruled. With respect to the hearings, Respondent had two lawyers at the preliminary hearing conference (like Claimant's Counsel), and three lawyers at the trial (one of whom did not participate in the opening, closing or examination of witnesses). If this type of staffing and collaboration was necessary for Respondent's Counsel, it seems equally reasonable for Claimant's Counsel. Moreover, the other entries about which Respondent object seem equally reasonable. There is nothing unreasonable about having one lawyer draft a response for 1.3 hours and another lawyer review and revise the draft for .3 hours. *See* February 13, 2020 hours. If anything, this type of collaboration seems very efficient and I could easily see another attorney reviewing, including proofreading and analyzing arguments for significantly more time than 18 minutes.

Respondent also broadly objects to the number of lawyers and staff that worked on this matter on behalf of Claimant arguing that it is unreasonable for "eight attorneys from two out-of-state law firms to litigate this straightforward KCPA case" and resulted in "grossly inefficient and duplicative billing practices." Opp. at p. 7. I have reviewed Claimant's Counsel's billing records and concur that two lawyers performed the bulk of the work. Claimant's Counsel explained the need for other attorneys' involvement, including more senior counsel to handle corporate rep depositions, and personal issues that precluded an attorney from participating in the hearing. Moreover, the way in which Respondent's Counsel staffed this case undercuts the argument that there were too many attorneys for Claimant working on a straightforward case. Six different attorneys were listed on Respondent's initial checklist for conflicts, and three other attorneys (Crushman, Coit and Hartmann) who were not initially identified as counsel for Respondent appeared at hearings on Respondent's behalf. Respondent cannot argue throughout the hearing about the nationwide implications of this case, staff it as if it had nationwide implications and then complain when Claimant's Counsel does the same.

Based upon the above, Claimant's Counsel's hours will be reduced from 217.36 to 214.66 hours.

8

C. **Factor 4 (The Amount Involved and Results Obtained)**

Not surprisingly, the parties also strenuously disagree about how the amount involved and the results obtained impact the fee award. Respondent argues that Claimant's fee request is not proportionate to the award and must be reduced. Specifically, Respondent claims that "well-established Kansas law and Rules of Professional Conduct mandate that the award should be, *at most*, . . . a 5x multiplier" on recover. Opp. Brief at 14. I respectfully disagree with Respondent's reading of Kansas law. As is fully set forth in Claimant's reply briefing, Kansas has not adopted such a hard and fast rule.

Although Kansas courts examine whether a fee request is proportionate to the award, Kansas law does not mandate or require any specific proportionality. *In re F.*, 51 Kan. App. 2d 126, 128, 341 P.3d 1290, 1292 (Kan. 2015) (district court should consider the eight factors and give "appropriate consideration to those that applied"). Importantly, and contrary to Respondent's assertion, no one factor under Rule 1.5 controls over all of the others. *Johnson,* 281 Kan. at 951 ("KRPC 1.5 contains nothing that suggests one factor is to dominate the other seven, . . ..). The United States Supreme Court has further cautioned against requiring a "precise rule or formula for making these [attorneys' fee] determinations." *Hensley v. Eckerhart*, 461 U.S. 424, 435–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

In addition to these general principals, Kansas courts have also cautioned that in consumer cases, fees do not necessarily need to be proportionate to the damages recovered. *Wilkinson v. I.C. Sys., Inc.,* No. 09-2456-JAR, 2011 WL 5304150, at *4 (D. Kan. Nov. 1, 2011) (citing *Homa v. Am. Express Co.,* 558 F.3d 225, 234 (3d Cir.2009) (finding award of attorney's fees need not be proportionate to damages recovered in consumer fraud action); *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 974 (4th Cir.1987) (reasoning that since "there will rarely be extensive damages in a [consumer protection action], requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the [consumer protection statute]")). As recently articulated in a concurring opinion from the Kansas Appellate Court:

> The statutory provision allowing a prevailing plaintiff to recover attorney fees under the KCPA serves an important public policy: The availability of a fee award ought to encourage a lawyer to pursue a claim for an individual victim even when the claim entails comparatively limited financial losses that would otherwise make the litigation economically unrewarding. Without the fee incentive for private lawyers, suppliers of relatively inexpensive services or products could trade in misleading representations and shoddy goods knowing the Kansas Attorney General and local district or county attorneys lack the resources to handle a high volume of KCPA violations. In that way, the fee award allows lawyers to act as private attorneys general to attack and root out the deceptive and unconscionable practices prohibited in the KCPA.

*Richardson,* 2020 WL 4723097, at *10.

9

After review of the billing records, briefing, including citations to case law and arguments of counsel, I decline to reduce a fee award on the grounds of proportionality.[6] Claimant was successful at trial. He prevailed on his claims; the fact that he was not awarded the maximum amount of a statutory penalty (because it would have been punitive), does not mean that he was not successful. He was awarded the full benefit of the bargain.

To adopt Respondent's logic, Claimant's attorneys could never have recovered more than a fraction of their time spent because it would always be disproportionate to the maximum amount of damages recoverable to Claimant under the KCPA. To interpret the law in this manner would undermine the public policy of the KCPA by discouraging attorneys from representing consumers in these kinds of matters, and encourage inappropriate gamesmanship of counsel. My analysis might be different if I saw some indication that Respondent offered to resolve this claim with Claimant for something at or above what Claimant was awarded and the offer was rejected so that his Counsel could simply increase their fees. From the record before me, however, it appears that Claimant's Counsel had no choice but to put in the work needed to successfully prosecute Claimant's claims.

### D. Factors 2, 5, 6, and 8

I do not find the remaining factors to be particularly relevant in this case and they were not largely addressed or briefed by the parties. Claimant's Counsel did not provide detailed information regarding the novelty or difficulty of the case or questions involved, the nature or length of their professional relationship with the client, or information regarding the preclusion of other employment. Claimant did indicate that the fee was a contingency fee but did not provide the amount of that contingency fee, or how their fee arrangement may impact a fee award. Respondent asks me to make a downward adjustment to a fee award because Claimant's Counsel did not fully analyze them. However, there is no requirement that all of the factors be relevant to a particular case.

In reviewing the submissions of the parties and case law, I find that these factors are neutral and do not justify an upward or downward adjustment. Claimant's Counsel's hours equate to approximately one lawyer working a forty-hour week for five and a half weeks. Although this was not necessarily a difficult or novel case, and I suspect that there was a limited prior relationship between Claimant and his Counsel, to handle a case in less than six weeks, from start to finish, including filing a lawsuit, written discovery, in-person depositions which involved travel, an evidentiary hearing, and copious post-hearing briefing, is reasonable. Overall, I find that this amount of time is very efficient for litigation and unlikely to have resulted in a preclusion of other employment opportunities.

Based on the above analysis of these factors, I determine that a reasonable fee in this case is $96,597.00 or 214.66 hours x $450.00 per hour.

---

[6] To the extent any further reduction would be required under this factor, it is my opinion that the reduction is fairly covered by the reduction of Claimant's Counsel's blended hourly rate.

### E. Costs

Claimant seeks an award of costs in the amount of $10,739.94. Respondent objects to those costs, except as to costs for transcripts. Accordingly, Claimant's Counsel will be awarded his costs in the amount of $5,095.69 for deposition and hearing transcripts.

Respondent objects to the remaining costs, including for research, travel, meals and exhibits, on the grounds that the costs are vague and have not been itemized or described in such a way that would allow Respondent to ascertain the reasonableness of the cost, especially in light of the overlapping cases ongoing between Respondent and Claimant's Counsel. In reply, Claimant merely directs the Arbitrator to its supplemental brief that generally summarizes these costs. Absent additional information in which to assess the reasonable nature of these expenses, I concur with Respondent that the information before me is too vague to determine whether these expenses are reasonable.

Respondent raised legitimate questions about Claimant's Counsel's expenses based upon the records provided. For example, Claimant is seeking to recover costs for searches conducted on Pacer. Although this amount has been discounted, and is relatively minimal, Respondent objects because the records do not explain why Pacer research would be needed since this case is in Arbitration, and not in federal court. Similarly, Respondent questions why $153.86 was spent on exhibit copies since it claims that it provided exhibits to witnesses and the arbitrator at no cost to Claimant. These are valid questions that were simply unanswered by Claimant.

Similarly, Respondent raises concerns that the amounts incurred for research and travel expenses lack detail such that Respondent can analyze whether they are reasonable and properly recovered. For example, Claimant seeks to recover $2,529.29 in airfare for travel to two depositions. From the billing records, it appears that three lawyers traveled for two depositions: Mr. Larry in February 2020 to Kansas City for Claimant's deposition, and Ms. Milan and Mr. Zigler to New York for Respondent's deposition in March 2020. This equates to $843.10 per flight, which on its face is considerably more than what I would expect to see for flight prices. These prices might reflect that counsel was flying first class, a fact that Respondent would have a right to object; or, alternatively, the price might simply reflect that the depositions were rescheduled at the last minute and these were the last two seats available on flights to get to the depositions. Similarly, it would make sense to me – even though the records simply say that these expenses were for flights – that this rate includes hotel fare since counsel appeared to travel the day before depositions. However, it is not my job to guess. Respondent raised legitimate questions and concerns with the lack of detail about these expenses and whether they are reasonable. Claimant has the burden to show that the requested amounts are reasonable and has failed to bring forth specific information explaining how these expenses were reasonable under the circumstances of this case (e.g., a declaration explaining why the costs were high could have cured this deficiency).

Although I do not doubt that these costs were incurred, or that the general buckets of costs presented by Claimant are typically the type of costs that are recoverable, I concur with Respondent that these entries are too vague for me to ascertain whether they were reasonable (especially when they are significantly higher than I would typically expect to see in a case this size). Accordingly, I am reducing the remaining costs by 50% and awarding Claimant a total of $7,917.82.

11

## FINAL AWARD

Claimant is awarded **$253.50** against Respondent for his claims.  Claimant is also awarded **$96,597.00** in attorneys' fees and **$7,917.82** in costs against Respondent.

The administrative fees of the American Arbitration Association (AAA) totaling **$2,400** shall be borne as incurred, and the compensation of the arbitrator totaling **$5,000** shall be borne as incurred.

The above sums are to be paid on or before 21 days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration.  All claims not expressly granted herein are hereby denied.

| | |
|---|---|
| August 25, 2020 | _Virginia Stevens Crimmins_ |
| Date | Virginia Stevens Crimmins, Arbitrator |