USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
BRODY SIMPSON,                                          :
                                        Petitioner,     :
                                                        :
              -against-                                 :
                                                        :          20-CV-7630 (VEC)
                                                        :
PELOTON INTERACTIVE, INC.,                              :          OPINION AND ORDER
                                                        :
                                        Respondent.     :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Petitioner Brody Simpson brings this action against Respondent Peloton Interactive, Inc.

("Peloton") to confirm a final arbitration award, pursuant to the Federal Arbitration Act

("FAA"), 9 U.S.C. § 1 *et seq.*  Pet., Dkt. 1.  Peloton does not oppose the Petition.  Ltr., Dkt. 11 at

1.  For the reasons discussed below, the Petition is GRANTED.

## BACKGROUND

       Peloton sells exercise equipment and provides subscription-based fitness services,

including a library of on-demand classes ("Peloton Service").  *See* Pet. ¶¶ 9–10.  As a marketing

strategy, Peloton advertised on social media and on its website that its library of classes was

"ever-growing."  *See* Arbitration Op., Dkt. 2-3 ¶ 3 ("[A]s a part of its advertisements, Peloton

stated that its library of fitness classes was 'ever-growing' and 'growing.'").[1]  In July 2018,

Simpson purchased a Peloton bike and an accessory package for $2,454.00 from Peloton's

website.  *See id.* ¶ 7.  He also purchased a 39-month prepaid subscription to the Peloton Service

for $1,521.00.  *Id.*  When Simpson purchased the bike and when he first logged on to the Peloton

---

[1]     *See also* Arbitration Op., Dkt. 2-3. ¶ 25 ("Peloton's website prominently touted its . . . 'ever-growing' library of live and on-demand studio classes.'").

Service, he agreed to Peloton's Terms of Service, including an arbitration clause. *See* Pet. ¶¶ 1, 14; *see also* Terms of Service, Dkt. 2-2.

On March 25, 2019, Peloton removed approximately 53.6% of its classes from its library in response to litigation alleging that Peloton did not have the appropriate copyright licenses for the music played during those classes. Arbitration Op. ¶¶ 16–22, 35. On July 19, 2019, Simpson filed a demand for arbitration, pursuant to the arbitration clause in the Terms of Service, alleging that Peloton violated the Kansas Consumer Protection Act §§ 50-625, *et seq.*, by misrepresenting the size of its library as "ever-growing." *See* Pet. ¶¶ 46–49. Simpson also claimed that Peloton should have known it lacked the required copyright licenses for the music used in over half of its classes, such that it should never have represented to consumers that its library could legitimately be "ever-growing." *Id.* ¶ 47.

After a hearing, on June 23, 2020, the Arbitrator issued an Interim Award finding for Simpson: he had been promised an "ever-growing" library of on-demand classes, and Peloton failed to deliver. Arbitration Op. at 11–13. On August 25, 2020, the Arbitrator issued a Final Award ordering Peloton to pay Simpson $253.50 in damages (the cost of his subscription package for the 6.5-month period during which the library had fewer classes than promised), $96,597.00 in attorneys' fees, and $7,917.82 in costs. Final Award, Dkt. 2-4 at 12

On September 11, 2020, Peloton paid the award in full. Ltr., Dkt. 11 at 1. On September 17, 2020, Simpson filed this Petition to confirm the Arbitrator's Final Award. On September 21, 2020, Peloton informed the Court that it did not oppose the Petition. *Id.*

## DISCUSSION

### I. Subject-Matter Jurisdiction

Pursuant to Article III of the Constitution, federal courts may only hear "cases and controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992). Because Peloton paid the

award prior to the filing of this Petition, the Court *sua sponte* considers whether there truly is a case or controversy over which the Court has subject-matter jurisdiction.

Section 9 of the FAA states that "any party to the arbitration may apply to the court . . . for an order confirming the award." 9 U.S.C. § 9. Because "a party to an arbitration is entitled to confirmation of an award" and because Section 9 "does not provide that only disputed arbitration awards may be confirmed," until the party "receives that confirmation an ongoing case and controversy exists" under Article III of the Constitution. *Nat'l Cas. Co. v. Resolute Reinsurance Co.*, No. 15-CV-9440, 2016 WL 1178779, at *3 (S.D.N.Y. Mar. 24, 2016) (finding a case or controversy even though the arbitration award was paid in full before the petition was filed); *see also Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2020) ("Under the FAA a party's injuries are only fully remedied by the entry of a confirmation order.").[2]

In short, even when an arbitration award has been fully paid, until the award is confirmed, a case or controversy exists and the Court has subject-matter jurisdiction.

## II. Confirming the Arbitration Award

### A. Legal Standard

Pursuant to the FAA:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must grant* such an order, unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

---

[2]    Relatedly, prior compliance with an arbitration award is not grounds for a Court to refuse to confirm the award pursuant to the FAA. *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007); *Schusterman v. Mazzone*, No. 19-CV-212, 2019 WL 2547142, at *4 (S.D.N.Y. June 19, 2019).

9 U.S.C. § 9 (emphasis added). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citation omitted). "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Loc. 32B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

The Second Circuit has "repeatedly recognized the strong deference appropriately due [to] arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007). Courts should "vacate an arbitration award only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." *Id.* at 139.[3] When a petitioning party abides by the statutory requirements of the FAA in seeking confirmation, including a one-year statute of limitations, confirmation of the award is mandatory. *See Nat'l Cas. Co.*, 2016 WL 1178779, at *3.

When a petition to confirm an arbitration award is unopposed, courts treat the petition "as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair*, 462

---

[3]    The four statutory bases for vacatur are: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

F.3d at 109; *see also Trs. of New York City. Dist. Council of Carpenters Pension Fund, et al. v. Ferran Dev. Corp.*, No. 13-CV-1482, 2013 WL 2350484, at *2 (S.D.N.Y. May 30, 2013).

## B. Application

The Arbitration Clause in the Terms of Service provides that any "dispute, claim, or controversy arising out of [the Terms of Service] . . . will be resolved solely by binding, individual arbitration . . . ." Pet. ¶ 14; *see also* Terms of Service at 18. In the Terms of Service, the parties agreed that the FAA would govern any arbitration. *See* Terms of Service at 18–19 ("You and Peloton agree that the U.S. Federal Arbitration Act . . . governs the interpretation and enforcement of these Terms . . . ."). Courts must confirm arbitration awards resulting from proceedings governed by the FAA when some colorable justification can be gleaned from the record "unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (cleaned up). In this matter, there are no statute of limitations concerns; Simpson properly petitioned to confirm the Final Award well within one year of its issuance.[4] None of the other statutory exceptions apply. Moreover, the Court finds that the Final Award is well-reasoned and provides more than a colorable justification for the outcome reached.

The arbitration award ordered Peloton to pay Simpson $253.50 in damages, $96,597.00 in attorneys' fees, and $7,917.82 in costs. Final Award, Dkt. 2-4 at 12. Peloton has already paid that amount. Ltr., Dkt. 11 at 1. "Because the Award is for a sum certain, the Court need not make further inquiry into damages." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06-CV-5106,

---

[4] The Final Award was issued in August 2020, *see* Final Award, Dkt. 2-4 at 12, and Simpson filed the Petition a month later, *see* Pet., Dkt. 1 at 1.

2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).[5]  Therefore, the Court confirms Simpson's award of $253.50 in damages, $96,597.00 in attorneys' fees, and $7,917.82 in costs.

## CONCLUSION

For the foregoing reasons, Simpson's Petition to confirm the arbitration award is GRANTED.[6]

The Clerk of Court is respectfully directed to enter judgment for Plaintiff in the amount of $253.50 in damages, $96,597.00 in attorneys' fees, and $7,917.82 in costs.  The Clerk is further directed to terminate all open motions and to close the case.

**SO ORDERED.**

Date:  **July 2, 2021**
       **New York, New York**

                                        **VALERIE CAPRONI**
                                      **United States District Judge**

---

[5]    *See also Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14-CV-8420, 2015 WL 774714, at *2 (S.D.N.Y. Feb. 20, 2015); *Abondolo v. H. & M. S. Meat Corp.*, No. 07-CV-3870, 2008 WL 2047612, at *3 (S.D.N.Y. May 12, 2008); *cf. Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

[6]    Because Peloton paid in full prior to the filing of the Petition, the Court is at a loss to understand why Simpson filed this action.  *See Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984) ("A party, successful in arbitration, seeks confirmation by a court generally because he fears the losing party will not abide by the award.").  Although the Court understands that Simpson's counsel represents more than 2,000 individuals with similar claims against Peloton, *see* Final Award at 4, it is a mystery how confirmation of this award will assist Mr. Simpson, in whose name this action was filed, or will assist counsel's larger efforts.  Even more baffling is the supposed urgency in having the Court enter its decision.  *See* Ltr., Dkt. 22 (implying dissatisfaction with the Court's failure to enter its decision earlier and requesting a status conference).  Although the Court gave Simpson the opportunity to explain why this matter should take priority over earlier filed actions where plaintiffs are still seeking relief, *see* Endorsement, Dkt. 23, Simpson did not avail himself of the opportunity to do so.